UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANDREW JAMES MCGONIGLE,<br>*on behalf of himself and*<br>*others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>TELEFLORA LLC,<br><br>Defendant. | Civil Action No.: 1:25-cv-00807-MSN-WEF |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TELEFLORA LLC'S
MOTION TO DISMISS COUNT I OF PLAINTIFF'S SECOND AMENDED
<u>COMPLAINT</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Teleflora LLC

("Teleflora") hereby moves to dismiss Count I of Plaintiff Andrew James McGonigle's

("Plaintiff") Second Amended Complaint ("SAC") (ECF Dkt. 38) with prejudice.

I.      INTRODUCTION

Plaintiff is a serial litigant who has brought a barrage of nearly *three-dozen*[1] putative

class action cases premised upon various companies' supposed violation of the Telephone

---

[1] *See, e.g., McGonigle v. Bond No. 9*, No. 1:24-cv-01742 (E.D. Va. Oct. 1, 2024);
*McGonigle v. Laurice El Badry Rahme Ltd.*, No. 1:24-cv-01742 (E.D. Va. Oct. 1, 2024)
*McGonigle v. Zales Delaware, Inc.*, No. 1:24-cv-01820 (E.D. Va. Oct. 15, 2024)
*McGonigle v. Shopperschoice.Com, LLC*, No. 3:25-cv-00152 (M.D. La. Oct. 25, 2024);
*McGonigle v. Filters Fast LLC*, No. 1:24-cv-02063 (E.D. Va. Nov. 19, 2024);
*McGonigle v. HSN, Inc.*, No. 8:24-cv-02712 (M.D. Fla. Nov. 21, 2024);
*McGonigle v. Walker & Co. Brands, Inc.*, No. 1:24-cv-02140 (E.D. Va. Nov. 26, 2024);
*McGonigle v. FTD, LLC*, No. 1:24-cv-12201 (N.D. Ill. Nov. 26, 2024);
*McGonigle v. Midwest Catalog Brands LLC*, No. 3:24-cv-00864 (W.D. Wisc. Dec. 5, 2024);
*McGonigle v. Value City Furniture, Inc.*, No. 2:24-cv-04293 (S.D. Ohio Dec. 23, 2024);

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5).  In this case against Teleflora, Plaintiff's allegations focus on two text messages he claims to have received from Teleflora in October 2024.  SAC, ¶¶ 28-29.  He asserts one cause of action under the TCPA, claiming that text messages from Teleflora were sent to his number without his consent while his number was on the National Do-Not-Call Registry ("DNC Registry").  *Id.*, ¶ 72.  Plaintiff also asserts a cause of action under the Virginia Telephone Privacy Protection Act ("VTPPA") based on similar factual allegations.  *Id.*, ¶ 78.

Despite his efforts to further his burgeoning TCPA career, Count I of the SAC alleging violation of section 227(c)(5) of the TCPA should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for at least the following reasons, which remain uncured despite two attempts at amendment:  (1) section 227(c) of the TCPA does not apply to text messages, (2) even if it did, the private right of action afforded by section 227(c)(5),

---

*McGonigle v. Alliance Entertainment, LLC*, No. 0:24-cv-62443 (S.D. Fla. Dec. 29, 2024);
*McGonigle v. Everyday Dose LLC*, No. 1:24-cv-25115 (S.D. Fla. Dec. 30, 2024);
*McGonigle v. LG Electronics USA*, No. 1:25-cv-02700 (D.N.J. Jan. 11, 2025);
*McGonigle v. D'artagnan, Inc.*, No. 1:25-cv-00052 (E.D. Va. Jan. 11, 2025);
*McGonigle v. Office Depot*, No. 9:25-cv-80069 (S.D. Fla. Jan. 17, 2025);
*McGonigle v. Perpay, Inc.*, No. 2:25-cv-00326 (E.D. Pa. Jan. 20, 2025);
*McGonigle v. Richmond Fitness, Inc.*, No. 1:25-cv-00103 (E.D. Va.  Jan. 21, 2025);
*McGonigle v. SR Holdings Management LLC*, No. 1:25-cv-01674 (N.D. Ill. Feb. 18, 2025);
*McGonigle v. Skull Shaver, LLC*, No. 1:25-cv-00424 (E.D. Va. Mar. 8, 2025);
*McGonigle v. Walker and Company Brands*, No. 1:25-cv-02314 (N.D. Ga. April 25, 2025);
*McGonigle v. Robbins Research Int'l, Inc.*, No. 1:25-cv-00800 (E.D. Va. May 8, 2025);
*McGonigle v. Telescents, Inc.*, No. 1:25-cv-00845 (E.D. Va. May 15, 2025);
*McGonigle v. Pure Green Franchise Corp.*, No. 1:25-cv-61164 (S.D. Fla. June 10, 2025);
*McGonigle v. Dickey's Barbqecue Restaurants, Inc.*, 1:25-cv-01062 (E.D. Va. June 24, 2025);
*McGonigle v. Freedom Debt Relief, LLC*, No. 3:25-cv-05426 (N.D. Cal. June 27, 2025);
*McGonigle v. Moriarty Gem Corp.*, No. 1:25-cv-00398 (N.D. Ind. July 18, 2025)
*McGonigle v. Omaha Steaks, LLC*, No. 8:25-cv-00509 (Ne. Dist. Ct. Aug. 20, 2025);
*McGonigle v. Why Direct LLC*, No. 3:25-cv-00934 (E.D. Va. Nov. 4, 2025);
*McGonigle v. United Wholesale Mort'g, LLC*, No. 2:25-cv-13865 (E.D. Mich. Dec. 2, 2025);
*McGonigle v. Freebird, Inc.*, No. 1:25-cv-02503 (E.D. Va. Dec. 30, 2025);
*McGonigle v. Maxim Lending Corp.*, No. 8:26-cv-00106 (C.D. Cal. Jan. 14, 2026)

pursuant to which Plaintiff brings suit, is limited to "telephone call[s,]" which do not include "text messages"; (3) section 227(c) does not apply to cellular telephones; and (4) even if cellular phones were considered "residential" for purposes of the TCPA, Plaintiff still has not alleged and cannot sufficiently allege that his cell-phone number, which appears to be used significantly for class action litigation, is a residential phone number.

Plaintiff's TCPA claim relies upon previously issued orders and guidance from the Federal Communications Commission ("FCC"). However, as the Supreme Court has confirmed on two recent occasions, this Court is "not bound by the FCC's interpretation of the TCPA" (*see McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168 (2025)) and, instead, must conduct its own analysis and reach "the reading the [C]ourt would have reached if no agency were involved." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (overturning *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984) ("*Chevron*")).

As several district courts have analyzed and confirmed, the plain language of the TCPA is clear: a text *message* is not a "telephone *call*" as that term is used in 47 U.S.C. section 227(c)(5). *See Davis v. CVS Pharmacy, Inc.*, 797 F.Supp. 3d 1270, 1272 (N.D. Fla. Aug. 26, 2025); *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp. 3d 894, 899-900 (C.D. Ill. July 21, 2025) (on appeal); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, *1-*2 (M.D. Fl. Oct. 24, 2025).[2] Because an independent, plain reading of the TCPA, as written and understood in 1991, confirms that text messages are not subject to section 227(c)(5), Plaintiff's TCPA claim must be dismissed.

---

[2] As discussed, *infra*, Teleflora acknowledges that a split in district court opinions presently exists with respect to whether text messages are regulated by the TCPA provisions asserted in this action, although Teleflora is unaware of any Virginia district court decision on this issue.

And, because cellular phones are not residential telephones under the TCPA (as the relevant provision applies only to *residential* telephone subscribers), Plaintiff's TCPA claim, which, again, is premised upon the receipt of text messages on a cell phone, additionally fails as a matter of law.  And, even if cellular phones were subject to regulation here—though, they are not—Plaintiff cannot sufficiently allege that his cell-phone number, which appears to be used significantly for class action litigation, is a residential phone number.

Because Plaintiff's TCPA claim fails as a matter of law, it should be dismissed with prejudice.

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff filed his Complaint against Teleflora on May 9, 2025, alleging violations of Subsection 227(c)(5) of the TCPA.  ECF Dkt. 1.  After Teleflora filed a motion to dismiss his Complaint (*see* Dkt. 19), he filed a First Amended Complaint ("FAC") (Dkt. 22).  After Teleflora moved to dismiss the FAC (Dkts. 23, 24, 34), Plaintiff was granted his request to file the operative SAC (Dkt. 38).

 In the SAC, Plaintiff alleges that on August 5, 2024, he acquired the cell phone number (804) 238-XXXX.  *Id.*, ¶ 13.  He alleges that this is his "personal residential telephone number" and that he has not used it for "business or commercial purposes."  *Id.*, ¶¶ 14-15.  Plaintiff alleges that he uses his phone number "for personal use only[,]" that he "does not have a landline," that the subject number is his "only telephone number[,]" that he uses it "primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes[,]" and that he "personally pays for his cell phone plan[.]"  *Id.*, ¶¶ 20-25.  Plaintiff alleges that he registered this number to the DNC Registry on August 5, 2024, the very same day he acquired said number, but inconsistently also alleges that his number had actually already been registered since 2014 by a prior owner of the phone number.  *Id.*, ¶ 16.

Plaintiff does not claim that he took any steps to mitigate his alleged damages or otherwise avoid the claimed harms, such as by simply responding "STOP" to any alleged Teleflora text message or otherwise requesting that Teleflora discontinue sending him text messages. Rather, he allowed the alleged text messages to continue so that he could file suit and purport to seek higher statutory damages. Nevertheless, Plaintiff claims that the two subject text messages caused him an "actual harm" as "an invasion of privacy, an intrusion into his life, and a private nuisance." *Id.*, ¶ 35. Plaintiff seeks to certify a nationwide class pursuant to the TCPA, as well as a Virginia sub-class pursuant to the VTPPA, of individuals who allegedly did not consent to receive text messages from Teleflora. *Id.*, ¶ 39.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently state a claim for relief. "[B]are assertion[s]" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

On a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "[L]egal conclusions pleaded as factual allegations, 'unwarranted inferences,' 'unreasonable conclusions,' and 'naked assertions devoid of further factual enhancement' are not entitled to the presumption of truth." *Matherly v. Andrews*, 859 F.3d 264, 277 (4th Cir. 2017) (citation omitted). "A trial court is permitted to deny leave to amend a complaint if the proposed amendment would be futile." *Elrod v. Busch Entm't Corp.*, 479 Fed. App'x 550, 551 (4th Cir. 2012) (citation omitted).

IV.    **ARGUMENT**

    A.    **Plaintiff's TCPA Claim Should Be Dismissed With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

        1.    **This Court should adopt the view of courts holding that a text message is not a "telephone call" under 47 U.S.C. section 227(c)(5)**

"When interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). "'It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Id*. (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, as the plain language of the statute confirms, Plaintiff's TCPA claim fails as a matter of law because section 227(c)(5) and its implementing regulations were not intended to regulate text messages.

Section 227(c)(5) of the TCPA provides a private right of action solely to "[a] person who has received more than one ***telephone call*** within any 12-month period…in violation of the regulations prescribed under this subsection…". (Emphasis added). Thus, this provision creates a private right of action exclusively for "telephone call[s]" received in violation of the statute. An analysis of this plain language yields only one result: a telephone *call*, under its "ordinary, contemporary, common meaning[,]" plainly is <u>not</u> a text *message*.

And, this reading makes intuitive sense: as a district court in Florida, analyzing precisely this issue, aptly noted, "'[n]o normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language has ever written the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner.'" *Davis*, 797 F.Supp. 3d at 1273.

6

Other district courts directly analyzing this issue have agreed, observing:

- "Under the principles of statutory interpretation, a court must start with the text of the statute to ascertain its plain meaning…Section 227(c)(5) simultaneously explicitly refers to a 'telephone call', a term not defined in the statute itself, and remains silent as to its application to text messages. **Text messaging was not an available technology in 1991, and thus "telephone call" would not have included text messages or SMS messages…Moreover, in today's American parlance, 'telephone call' means something entirely different from 'text message'. Thus, under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages**." *Jones*, 792 F.Supp. 3d at 899 (emphasis added).

- "'[T]he statutory text here is clear, and a text message is not a 'telephone call''…in common American English usage, a 'telephone call' and a 'text message' are separate and distinct forms of communication." *Sayed*, 2025 WL 2997759, at *2 (quoting *Davis*, *supra*, 2025 WL 2491195, at *1).

Because the unambiguous, plain language of section 227(c)(5) dispositively confirms that text messages are not "telephone call[s]" so as to afford a private right of action for text messages, the Court's inquiry should end here. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous"). Because a text message plainly is not a "telephone call," Plaintiff fails, as a matter of law, to state a claim for violation of section 227(c)(5).

Importantly, and as further confirmation of this inescapable reality, when the TCPA was enacted in 1991, "[t]ext messaging was not an available technology…and thus 'telephone call' would ***not*** have included text messages or SMS messages." *Jones*, 792 F.Supp. 3d at 899. In fact,

the first text message ever sent was transmitted more than a year later, in December 1992.  Rose Eveleth, *The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas'*, Smithsonian Magazine (Dec. 5, 2012).[3]  Because text messaging did not exist in 1991 when the TCPA was enacted, it cannot plausibly be argued that Congress intended for a "telephone call" to include a text message.  *Jones*, 792 F.Supp. 3d at 899.

Notably, and consistent with a narrower interpretation of "telephone call," Congress demonstrated that it knew exactly how to enact TCPA legislation that addressed text messages as opposed to telephone calls:  in fact, Congress later amended the TCPA to explicitly bring text messages within its scope under a *different* provision regarding Caller ID requirements.  *See* Consolidated Appropriations Act, 2018, H.R. 1625, 115th Cong., Pub. L. No. 115-141, div. P, § 503(a) (2018) (codified at 47 U.S.C. § 227(e)).  In doing so, Congress specifically distinguished between "a call made using a voice service" from a "text message sent using a text messaging service."  47 U.S.C. § 227(e)(8)(A), (B).  This amendment, however, did not expand the language of section 227(c)(5), the provision on which Plaintiff bases his claim.  Congress, which knew the difference between a call and a text message, did not amend section 227(c)(5) to include text messages, even though it could have.  *Davis*, 797 F.Supp. 3d at 1274 ("Congress's use of the phrase 'telephone call or message' in a neighboring provision . . . shows that Congress does not use the term 'telephone call' to encompass all 'messages.'").

Put simply, Congress set clear limits for the TCPA.  The Supreme Court's directive, specifically in the context of the TCPA, is clear:  courts cannot rewrite the TCPA to update it for modern technology and instead "must interpret what Congress wrote" when the statute was

---

[3] *See* https://www.smithsonianmag.com/smart-news/the-first-text-messagesent-twenty-years-ago-was-merry-christmas-152311567 (last accessed February 4, 2026).

enacted. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 409 (2021) (rejecting the notion that the TCPA is an "agile tool" "malleably" drafted to mold to changing technologies) (internal quotation marks omitted). And, as the Supreme Court recently emphasized in *Loper Bright*, "[t]hat is the whole point of having written statutes; every statute's meaning is fixed ***at the time of enactment***." 603 U.S. at 400 (internal quotation marks omitted) (emphasis added). To read into the TCPA governance of text messages that plainly excluded through the statute's unambiguous language would be to contravene "the clear commands of [the TCPA's] text and the statutory context." *Duguid*, 592 U.S. at 406.

Unless Congress amends section 227(c)(5) to regulate text messages, "it is not [the Court's] job to apply laws that have not yet been written." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 456 (1984). *Plaintiff's* policy goals cannot transform the plain meaning of the TCPA, and this Court should reject Plaintiff's request asking it to legislate from the bench. *See Loper Bright*, 603 U.S. at 403 ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). To the extent Plaintiff believes the TCPA should be amended, his "quarrel is with Congress[.]" *See Duguid*, 592 U.S. at 409. While Plaintiff may believe there are compelling reasons to expand section 227(c) of the TCPA to reach the realities of today's technologies, only Congress may do as much. "It is for Congress to respond to the issues presented in this case and to address the realities of today's technology…". *Jones*, 792 F.Supp. 3d at 901. This Court should, as the *Jones* court did, refuse to read more into section 227(c) than Congress designed that section to encompass. *Id*. Because the plain language of the statutory text confirms that a text message is not a "telephone call," Plaintiff fails, as a matter of law, to state a claim for violation of section 227(c)(5).

To avoid this inescapable textual outcome, the SAC asks this Court to blindly adopt a 2003 FCC proclamation and other FCC guidance, issued years after the TCPA was enacted, relating to section 227(b) of the TCPA, *not* section 227(c) (*see* SAC, ¶ 67).[4]  That FCC guidance deemed that the term "call" under the TCPA "encompasses both voice calls and text calls", *see In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 165 (2003).[5] However, the FCC may not enlarge clearly set congressional limits in ways that contradict the statutory text.  Indeed, in issuing this proclamation, the FCC failed to identify any statutory or other basis for concluding that a text message was a "call."  Nonetheless, in response, while courts at that time generally adopted the FCC's view based upon existing interpretations under the *Chevron* doctrine requiring deference to the FCC, the *Chevron* doctrine is no longer.  *See Loper Bright*, 603 U.S. at 398-401, 412 (summarizing history of courts' prior deference based upon the *Chevron* doctrine and holding that *Chevron* deference no longer applies).

However, such automatic agency deference is now unwarranted—and, indeed, improper—following two recent Supreme Court decisions.  First, in *Loper Bright*, 603 U.S. at 392, the Supreme Court eliminated *Chevron* deference and expressly returned the courts to their traditional function "to decide whether the law means what the agency says" (citations omitted). As *Loper Bright* confirmed:  "agencies have no special competence in resolving statutory

---

[4] Indeed, in *Jones*, the Court noted that the very FCC order upon which Plaintiff relies in *this* action discussed the applicability of text messages to Section 227(b), *not* Section 227(c).  *Jones*, 792 F.Supp. 3d at 900-01.  The *Jones* court found the plain language of the TCPA controlled, holding, "[i]t is not for a court to legislate by reading into the TCPA something that is not there." *Id*. at 901.

[5] The FCC's use of the awkward term "text call", a phrase that is, and has never been, used in connection with texting on a cellular phone, is evidence in and of itself that the FCC was improperly attempting to put a square peg in a round hole through its interpretation that an SMS text *message* could be the same as voice telephone *call*.

ambiguities.  Courts do." *Id*. at 400-01.  As a result, courts must independently interpret a statute using "the reading the court would have reached if no agency were involved." *Id*. at 400.

Second, on June 20, 2025, following *Loper Bright*, the Supreme Court decided *McLaughlin*, 606 U.S. at 152—a TCPA case—and held that district courts are not "preclude[d]…from independently assessing whether an agency's interpretation of the relevant statute is correct" in accordance with "ordinary principles of statutory interpretation," thereby limiting the deference courts must give to the FCC's legal interpretations of the TCPA.

Simply put, following *McLaughlin* and *Loper*, this Court owes <u>no</u> automatic deference to FCC interpretations of statutory language in the TCPA and must instead interpret the TCPA based upon ordinary principles of statutory construction.  *See McLaughlin*, 606 U.S. at 168; *Loper Bright*, 603 U.S. at 400-01.  Thus, this Court must endeavor to reach the appropriate interpretation of the TCPA, as it was written in 1991, and without regard for the modern-day transition from landline to cellular telephones and the growing prominence of text messaging. *Id*.  Ultimately, with *Chevron* overturned, the Court is faced with a straightforward matter of statutory interpretation:  whether a text message is a "telephone call" under section 227(c)(5).  As discussed above, as the plain language of the TCPA confirms, it is not.

What is more, the FCC interpretation upon which Plaintiff relies was issued years after the TCPA's enactment.  While administrative interpretations issued "contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning[,]" *see Loper*, 603 U.S. at 394, the interpretations at issue here, as opposed to myriad others to which due respect may remain appropriate, were neither contemporaneous nor consistent:  they were adopted more than a decade after the TCPA.  *See In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 (2003).  Indeed,

the FCC did not extend applicable DNC Regulations to text messaging **until 2023**. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 FCC Rcd. 12247, 12256-57 (2023). This belated interpretation does not and should not change the unambiguous statutory interpretation.

Because a text message is not a "telephone call," Plaintiff cannot establish a claim for supposed violation of section 227(c)(5), which should be dismissed with prejudice.

**2.    The private right of action delineated under U.S.C. section 227(c)(5) applies to a subset of telephone solicitations regulated under the TCPA:  unlawful telephone calls, but *not* messages**

Section 227(c) of the TCPA and its implementing regulations prohibit "telephone solicitations" sent to subscribers that have registered their numbers on the DNC and have not otherwise provided consent. *See e.g.,* Section 227(c)(3)(F) (requiring regulations to "prohibit any person from making or transmitting a *telephone solicitation*" to a subscriber registered on the DNC (emphasis added)); 47 C.F.R. § 64.1200(c)(2) (prohibiting the initiation of a "*telephone solicitation*[]" to a subscriber who has registered their number on the DNC). Notably, the term "telephone solicitation" is defined in the TCPA under section 227(a)(4) to include *either* "the initiation of a telephone call or message... ."

Importantly, however, the private right of action upon which Plaintiff bases his entire TCPA cause of action can only be initiated by a "person who has received more than one *telephone call* within any 12-month period… ." Section 227(c)(5) (emphasis added). As such, even if text messages were construed to be generally regulated by the TCPA (which, as argued above, they cannot), the more narrow private right of action provided for by section 227(c)(5) applies solely to the specific subset of "telephone solicitations" that constitute "telephone call[s]"

and, consequently, specifically omits any private right of action based on *messages* that otherwise might constitute a regulated "telephone solicitation" under section 227(c).

As the *Davis* court recognized:

> however Congress defines 'telephone solicitation'—and whatever Congress directed the FCC to do in terms of regulating certain 'telephone call[s] or message[s]'—the private right of action Congress created exists only for those who received multiple 'telephone calls.'…In fact, Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not use the term 'telephone call' to encompass all 'messages.' Although [plaintiff] would have me conclude Congress used the term 'telephone call' in § 227(c)(5) and the term 'telephone call *or message*' in § 227(a)(4) to have identical meanings, courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings'

*Davis*, 797 F.Supp. 3d at 1274 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)) (emphasis in original).

Nor is it unusual that a statute would limit a private right of action to a subset of regulated conduct:

> Congress can (and does) provide private rights of action narrower than its full breadth of regulation…[Section] 227(c)(5) proves the point. It limits the private right to those who received two or more unwanted **calls**, even when a single call would violate the TCPA…Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'

*Davis*, 797 F.Supp. 3d at 1274 (emphasis added). Thus, even if a text message was interpreted as being a regulated "telephone solicitation" under the TCPA (which it cannot, given that text messages did not exist when the TCPA was enacted), it would require an act of statutory contortion to interpret a text message as being, on the one hand, a "telephone call" that can form the basis for a private right of action under section 227(c)(5), but at the same time interpret such

a message as somehow *not* a message-based telephone solicitation, which the TCPA omits as a basis for Plaintiff's section 227(c)(5) claim.

### 3. Non-binding cases finding that section 227(c)(5) applies to text messages are unpersuasive

Teleflora acknowledges that several post-*McLaughlin* district courts outside of Virgina have found that the private right of action afforded by section 227(c)(5) encompasses text messages, and anticipates that Plaintiff will rely on these cases in his Opposition to this Motion. These cases generally fall into one of two tranches, and should not guide this Court for the reasons set forth below.

The first tranche of cases have cursorily found or assumed that text messages are "calls" for purposes of this section, *without* engaging in the requisite or appropriate level of analysis required by *Loper Bright* and *McLaughlin*. *See, e.g., Wilson*, 2025 WL 2029274, at *4 (D. Or. July 21, 2025); *Bosley v. A Bradley Hospitality LLC*, 2025 WL 2686984, at *5 (Sept. 19, 2025). Because these cases fail to "independently interpret" the TCPA under ordinary principles of statutory interpretation as "if no agency were involved[,]" *Loper*, 603 U.S. at 400, such decisions offer little to no persuasive authority for this Court. And, again, when an independent analysis is conducted pursuant to *McLaughlin* and *Loper*, as *Jones*, *Davis*, and *Sayed* did correctly, the result is clear:  blind deference to the FCC is not owed, and section 227(c)(5) of the TCPA does not extend to forms of communications, like text messages, which did not exist at the time the TCPA was enacted.

The second tranche of cases engage in some level of analysis, but continue, even after *Loper Bright* and *McLauglin*, to labor under the misguided notion that reliance upon a strained dictionary definition of a "call" or a "telephone call" to find that the FCC's interpretation of a "call"—namely, that it encompasses text messages—is reasonable.  *See, e.g., Mujahid v. Newity,*

*LLC*, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10. 2025 (finding "that a text message falls with [the dictionary] definition"); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *2 (N.D. Cal. Oct. 7, 2025) (citing Black's Law Dictionary of a "call"); *Wilson v. Better Mortgage Corp.*, No. 2025 WL 3493815, at *5 (S.D.N.Y. Dec. 5, 2025) (citing Webster's dictionary definition of "telephone call"); *Mey v. Liberty Home Guard, LLC*, Case No. 5:23-cv-00281-JPB-JPM, Dkt. 153, at p. 14 (N.D. W.V. Jan. 5, 2026) (citing Webster's dictionary definition of a "call");[6] *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930, at *4 (S.D. Tex. Jan. 16, 2026) (citing Webster's Dictionary).[7] This approach is misguided because common meaning controls, not acontextual dictionary definitions. *United States v. Costello*, 666 F.3d 1040, 1043-44 (7th Cir. 2012). The Court's mandate is to find the *best* interpretation, not merely a remotely plausible interpretation. *See, e.g., Jones*, 792 F.Supp. 3d at 901 (rejecting a "reasonable" interpretation in favor of the best interpretation).

Importantly, under the expansive view Teleflora anticipates Plaintiff will urge the Court to adopt, "telephone call" would subject virtually all modern communications to the TCPA simply because they are received on a phone, like app-to-app messages, push notifications, and emails. This is not what Congress meant in 1991. The TCPA is not a free-wheeling statute regulating all communication received on a handset. It defies reason that Congress would have attributed anything other than the common meaning of a "telephone call" in 1991 (or, indeed,

---

[6] *Mey* further conflates statutory sections that use different language (*see* p. 12), relies upon pre-*McLaughlin* and *Loper Bright* authority (*see* p. 13), improperly defers to FCC interpretation (*see* p. 13-14), and improperly broadens the expressly limited statutory text (*see* p. 15).

[7] *Alvarez*, in fact, concedes that "of course, no ordinary person would use the word 'telephone call' to refer to a text message." *See* 2026 WL 202930, at *4.

now).  Plain language ends the inquiry, and these cases improperly contort that plain language to reach an implausible and impossible outcome.

What is more, none of these cases meaningfully (or, at all) address the fact that even while section 227(c) prohibits telephone solicitations (defined to include telephone calls or messages), the private right of action afforded by section 227(c)(5) is expressly narrower, authorizing a claim *only* for violative "telephone call[s,]" which excludes messages from the private right of action.[8]  For at least these reasons, those decisions finding that section 227(c)(5) applies to text messages are unpersuasive.  This Court should instead adopt the reasoning detailed in *Jones* and *Davis* decisions and find that a text message is not a "telephone call" under section 227(c)(5)'s private right of action.

**B.    Plaintiff's Cell Phone is Non-Residential and He Is Not a "Residential Telephone Subscriber"**

Plaintiff's TCPA claim also independently fails because the alleged text messages at issue were sent to his cellular phone, not a "residential telephone."

Under the TCPA's plain text, subsection 227(c)(5)—the statute's do-not-call provision—does not apply to cell phones and only governs violations of regulations promulgated by the FCC to "protect *residential telephone subscribers'* privacy rights to avoid receiving telephone

---

[8] The *Alvarez* decision acknowledges that other courts, including in *Davis*, have held that the private right of action under section 227(c)(5) is statutorily limited to a subset of regulated "telephone solicitations" under the TCPA, namely "telephone calls[,]" and therefore excludes a private right of action based on messages that might otherwise be regulated under the TCPA.  *See Alvarez,* 2026 WL 202930, at *5.  After acknowledging such contrary authority, it then suggests that "telephone call" should be broadly interpreted to mean all "telephone solicitations[,]" even though a telephone call is clearly only one subset of "telephone solicitation" as defined under the TCPA.  *See* Section 227(a)(4) (defining "telephone solicitation" as a "telephone call" or "message").  Such an interpretation abandons standard statutory interpretation and is unpersuasive: "when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings."  *Davis,* 797 F.Supp. 3d at 1274.

solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). Indeed, the TCPA's do-not-call provision was crafted specifically to protect privacy in the home. *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (explaining that Congress passed the TCPA to protect consumers from "'the proliferation of intrusive, nuisance [telemarketing] calls *to their homes*'") (emphasis added; quoting notes from Congressional findings for the Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(6)).

The TCPA "specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'" *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018) (quoting 47 U.S.C. § 227(c)(1)). These realities are fatal to Plaintiff's claim because "[a] cellular phone and a residential phone are not the same thing." *See Moore v. Triumph CSR Acquisition, LLC*, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023).

Congress chose to use the term "residential telephone" in two instances of the TCPA: when describing "residential telephone line" and when describing "residential telephone subscribers'." *See* U.S.C. §§ 227(b)(1)(B), (c)(1). So, just as "residential telephone" modifies the term "line" in section 227(b), so too does it modify the term "subscriber" in section 227(c)— in both instances referring only to home residential phones and not to mobile cellular phones. Section 227(c), therefore, does not include all subscribers to phone plans generally, even if they use their non-residential cell phones in a manner similar to residential telephone lines; like section 227(b)(1)(B) and its limitation to calls made to "residential telephone line[s]," section 227(c) is limited to "residential telephone subscribers"—*i.e.*, people who subscribe to residential telephone services. For that reason, "even the strongest addiction to a cell phone cannot transform it into a residential phone. A residential phone is a home phone that is hard-wired into

the building.  It means a land-line.  It is residential in a very literal sense."  *Moore*, 2023 WL 8601528, at *2.

Accordingly, as the *Moore* court held, the TCPA's express language provides that a "residential telephone" is one that is connected with a physical residence.  *Id*.  Conversely, a cellular telephone—which by its very nature is portable and, thus, neither connected nor hardwired into a house, is not residential.  And, "[c]ell phones do not present the same concerns as residential phones" because their "mobility and functionality to silence or decline calls alleviate the concerns inherent with a home telephone."  *Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023).

Consequently, in order to state a claim under subsection 227(c) of the TCPA, Plaintiff must plausibly allege that he received Teleflora's text messages on a residential telephone line.  He neither has nor can.  Without alleging that he is subscribed to a residential telephone, Plaintiff is not a "residential telephone subscriber" and cannot state a claim under the Do-Not-Call provision.  Plaintiff's TCPA claim should, therefore, be dismissed.

Moreover, the TCPA's structure confirms that Congress did not intend for the Do-Not-Call Provision to apply to cell phones.  The TCPA itself explicitly distinguishes between two types of telephones:  whereas some of its provisions are expressly limited to "cellular telephone service," such as subsection 227(b)(1)(A)(iii)'s restrictions regarding the use of auto-dialers, others only concern "residential" telephones, including the do-not-call rules set forth in subsection 227(c) as well as subsection 227(b)(1)(B)'s prohibition on the use of artificial or prerecorded voices.

Courts nationwide have long recognized the "clear distinction" between the TCPA's application to cell phones in some subsections and "residential" lines in others.  *See, e.g., Iniguez*

*v. CBE Grp.*, 969 F. Supp. 2d. 1241, 1249 (E.D. Cal. 2013); *Kapp v. E. Wisc. Water Conditioning Co.*, 2021 WL 778168, at *4 (E.D. Wisc. Mar. 1, 2021) ("While the defendants cite many cases that support the proposition that cell phones and residential landlines are distinct under the TCPA, they need not: such a distinction is clear from the text of the statute").

When courts interpret statutory text, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006); *see also Russello v. United States*, 464 U.S. 16, 23 (1982) ("where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quotations and citations omitted). In other words, had Congress intended for section 227(c) to include cell phone users, it would have included "cellular telephone" subscribers in the Do-Not Call provision, just as it did "residential telephone subscribers." *Cf.* 47 U.S.C. § 227(b)(1)(A)(iii); *id.* § 227(b)(2)(C). Because different provisions of the TCPA explicitly apply to cellular-telephone communications in some circumstances and those made to residential lines in others, Congress clearly was aware of the distinction between the two and only residential telephone lines are protected by the TCPA's do-not-call provisions. *Gaker*, 2023 WL 2472649, at *3. Under both these textual and structural analyses, the result is the same: "[a] cell phone is not a residential phone," and "any [texts] to a cell phone cannot violate" Subsection 227(c). *Moore*, 2023 WL 8601528, at *3.

Here, Plaintiff received the complained-of text messages on his cell phone—not on a residential landline. Thus, section 227(c)(5) is inapplicable. Plaintiff's TCPA claim fails as a matter of law and should be dismissed with prejudice.

### C.    Plaintiff's Allegations Still Do Not Suffice to Transform His Cell Phone Into A Residential Device

Even if a cellular device could be considered a residential device—though, it cannot—Plaintiff also otherwise fails to plausibly plead that his cell phone is a residential device.

Despite Plaintiff's allegations of residential use (*see* ECF Dkt. 38, ¶ 14), the nearly three-dozen TPCA class action cases Plaintiff filed against various business (*see* fn. 1, *supra*), combined with, for example, the fact that Plaintiff never replied "STOP" to avoid receipt of further allegedly unwanted messages, render it more than plausible that this phone was procured by Plaintiff for the purpose of then filing such lawsuits a few months later to obtain litigation income.  The fact that Plaintiff has filed nearly thirty other almost identical lawsuits in the past year fatally undermines any reasonable inference that the phone number at issue is "residential" within the meaning of Subsection 227(c), as opposed to one obtained and significantly used for extracting income from litigation.  *Cf. Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802-03 (W.D. Pa. 2016) (holding that a plaintiff who purchased her cell phone and minutes to receive more calls and file more TCPA lawsuits lacked Article III standing to pursue another TCPA case).  Plaintiff's TCPA claim, should, therefore be dismissed with prejudice for failure to plead factual allegations capable of supporting a reasonable inference that the phone number at issue is a "residential" one.  *See Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) ("[W]here amendment is futile, courts have exercised their discretion to deny leave to amend and dismiss with prejudice") (collecting cases).

## V.    CONCLUSION

For the foregoing reasons, Teleflora respectfully requests that this Court dismiss Count I of Plaintiff's SAC with prejudice.

DATED:    February 6, 2026        Respectfully submitted,

*/s/ Connor Kelley*

Kristina M. Diaz (*Pro Hac Vice*)
J. P. Pecht (*Pro Hac Vice*)
Lauren Fishelman (*Pro Hac Vice*)
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810
kristina.diaz@roll.com; jp.pecht@roll.com;
lauren.fishelman@roll.com

Connor Kelley (VA Bar No. 93596)
COVINGTON & BURLING LLP
850 10th Street NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 778-5628
ckelley@cov.com

Attorneys for TELEFLORA LLC

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 6, 2026, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.


By: <u>*/s/ Connor Kelley*</u>
Connor Kelley