**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| ANDREW JAMES MCGONIGLE, | ) | |
| *on behalf of himself and* | ) | Civil Action No.: 1:25-cv-00807 |
| *others similarly situated*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Jury Trial Demanded |
| v. | ) | |
| | ) | |
| TELEFLORA LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**</u>

## INTRODUCTION

A statute enacted in 1991 that prohibits "vehicles" in a park applies equally to sedans and Cybertrucks, even though Cybertrucks did not exist at the time. So too here. The Telephone Consumer Protection Act ("TCPA") authorizes the Federal Communications Commission ("FCC") to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list, § 227(c)(3)(F). For decades, Courts and the FCC have made those protections available to all residential phone subscribers, regardless of whether their phone numbers are associated with landline phones or cell phones. *See* 47 C.F.R. § 64.1200(c)(2), (e); 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003). The FCC has also determined that it may prohibit unsolicited text messages, not just voice calls. *See* 47 C.F.R. § 64.1200(e); 18 FCC Rcd. 14115; 38 FCC Rcd. 12247, 12256–57 (2023).

Teleflora has now filed a motion to dismiss. It makes a big ask. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Teleflora sees a chance to swing for the fences: It asks this Court to reject the FCC's longstanding interpretation and hold that the Do Not Call List protects only voice calls to landline phones, potentially upending Do Not Call List protection for millions of Americans.

Luckily for consumers nationwide, Teleflora's arguments have been repeatedly rejected. With respect to cellular telephones not being considered a "residential" line, "[i]t appears that since *McLaughlin Chiropractic*, every court examining this particular issue concerning 'residential'

1

phones has held that [47 U.S.C. § 227(c)]'s provisions apply to cell phones." *Harriel v. Bealls, Inc.*, No. 8:25-cv-1165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157, at *6 (M.D. Fla. Aug. 15, 2025).

Furthermore, most courts have found that telemarketing text messages fall within the statute's prohibition on "telephone solicitations." Indeed, the only district court within the Fourth Circuit to address this issue after *McLaughlin* has resolved it in the plaintiff's favor.

In *Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 U.S. Dist. LEXIS 739 (N.D.W. Va. Jan. 5, 2026), the court squarely rejected the argument that text messages fall outside § 227(c)(5). The court held that "[b]y explicitly including 'messages,' Congress made clear that the statute's protections extend beyond traditional voice calls." *Id.* at *17. It further explained that the TCPA defines "calls" to include "text messages" in another provision, Section 227(b), and that "[t]here is no reason to assign the same word a different meaning in Section 227(c), given that both provisions protect the same core interest: the consumer's right to be free from unwanted intrusions." *Id.* at *18. Thus, even within this Circuit, the only court to examine Teleflora's theory after *McLaughlin* rejected it.

Indeed, just last week, another federal district court rejected the same two theories advanced here by Teleflora in another case involving Mr. McGonigle that was originally filed in the Eastern District of Virginia before being transferred. In *McGonigle v. ShoppersChoice.com, L.L.C.,* ECF No. 75, No. 25-152 (M.D. La. Feb. 13, 2026)[1] the Court denied a motion to dismiss and held that § 227(c)(5) applies to cell-phone text messages under ordinary statutory interpretation principles, explaining that "both the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls' to persons on the National Do-Not-Call List." *Id.* at *17. The Court also rejected the same

---

[1] This decision is attached as <u>Exhibit 1</u>.

argument regarding text messages holding that a text message constitutes a call under the TCPA because "[a] plain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone.'" *Id.* at \*10. This Court should do the same.

## BACKGROUND

Plaintiff obtained his cell phone on August 5, 2024 and confirmed its registration with the National DNC Registry that same day as the number had also been registered by the prior owner. *See* Second Amended Complaint, ECF No. 38, at ¶¶ 14-16. Plaintiff obtained that phone number because he moved from Florida to Virginia. *Id.* at ¶¶ 17-18. Plaintiff does not have a landline telephone number or any other phone number. *Id.* at ¶¶ 19-21. He does not use his phone for business purposes, but instead uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes. *Id.* at ¶ 24. Plaintiff personally pays for his cell phone plan; it is not reimbursed by a business. *Id.* at ¶ 25.

Prior to obtaining this telephone number, the Plaintiff was not aware of the TCPA or other remedies to stop the calls other than placing the number on the Do Not Call Registry, which he already knew it was. *Id.* at ¶ 26. However, after the onslaught of calls and text messages he received not intended for him, including from Defendant Teleflora and other companies, the Plaintiff researched how to address the unwanted spam and learned of the TCPA. *Id.* at ¶ 27.

After Plaintiff obtained his cell phone number, he received at least two solicitation text messages from Defendant. *Id.* at ¶¶ 28-29. These text messages were sent in October 2024, more than thirty-one days after Plaintiff's number was registered with the DNC Registry. *Id.* Each message advertised the Defendant's business, including links to shop Defendant's website. *Id.* at ¶ 31. Plaintiff did not give Defendant prior express consent to send him these text messages nor did

he request this information. *Id*. at ¶¶ 33. In fact, Plaintiff had no prior relationship with the Defendant. *Id*. This is not disputed.

While the text messages were intended for someone other than, and unknown to, Plaintiff, Defendant knew, or should have known, that Plaintiff's number had been reassigned and was registered with the National DNC Registry. *Id*. at ¶¶ 36-38. Defendant knowingly chose not to subscribe to the FCC's Reassigned Number Database, which would have allowed it to avoid making telemarketing calls to reassigned telephone numbers, especially those on the DNC registry. *See id*. Indeed, calling the new owner of a phone number based on the prior owner's provisioning of a phone number is a violation of the Telephone Consumer Protection Act. *See, e.g., N. L. v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent."); *Elleby v. Liberty Univ.*, No. 5:21-CV-00093-KDB-DCK, 2022 U.S. Dist. LEXIS 41988, at *11 (W.D.N.C. Mar. 9, 2022) ("In sum, there is no basis to conclude that the TCPA affords [a defendant] a reasonable reliance or good faith defense" based on the provision of consent from a prior owner of a telephone number.).

## ARGUMENT

### I.    Plaintiff Sufficiently Alleges that He is a Residential Subscriber

Plaintiff McGonigle sufficiently alleges that he is a residential subscriber of his cellular telephone number entitling him to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision by alleging the facts and circumstances demonstrating that he uses his cellular telephone number exclusively for personal and household purposes. *Compare Gill v. Align Tech., Inc.*, 2022 U.S. Dist. LEXIS 87464, *8 (E.D. Wisc. May 16, 2022) ("Plaintiff's allegations that her wireless phone is a non-business, personal use phone that is

registered on the do-not-call list is sufficient to allege that the phone was residential use.") *with Hicks v. Alarm.com Inc.*, No. 1:20-cv-532, 2020 U.S. Dist. LEXIS 157433, at *12 (E.D. Va. Aug. 6, 2020) ("Plaintiff argues at length that cellular phone numbers are eligible for listing on the Do Not Call registry—which appears to be undisputed—but his argument never returns to the facts of this case or the use of his phone. Perhaps easily addressed by amendment, this is another example of inadequate factual support for Plaintiff's claims.").

Specifically, after moving from Florida to Virginia, on August 5, 2024, Plaintiff McGonigle obtained a Virginia cellular telephone number that, when he immediately went to personally register it on the National Do Not Call Registry, he determined was already registered on the National Do Not Call Registry. *See* Second Amended Complaint at ¶¶ 14-29. Since being assigned the new Virginia cellular telephone number he has never used the number for business or commercial purposes, has no landline or alternative number, and relies on this cell phone for the same household and personal uses traditionally associated with a home phone. *Id.* He primarily uses it to communicate with friends and family, schedule personal appointments, and manage household matters, and he personally pays for the plan without any business reimbursement. *Id.*

Given the transient nature of cellular telephone numbers, in 2018, the FCC established the Reassigned Number Database, which went online in 2021, to insulate companies like Defendant from liability for violating the TCPA by allowing them to determine whether a telephone number they intend to contact has been reassigned to someone who has not previously consented to be contacted by them. *See In re Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 FCC Rcd 12024 (F.C.C. Dec. 13, 2018). However, Defendant (and each of the other companies Plaintiff has sued under the TCPA) failed to use the Reassigned Number Database, resulting in its TCPA violative text messages to Plaintiff. *See* Second Amended Complaint at ¶¶ 31-33 ("The

Defendant sent the text messages without regard for the FCC's Reassigned Number Database and did not utilize the Reassigned Number Database prior to sending.").

Prior to obtaining this telephone number, the Plaintiff was not aware of the TCPA or other remedies to stop the calls other than placing the number on the Do Not Call Registry. *Id*. at ¶ 26. However, after the onslaught of calls and text messages he received not intended for him, including from Defendant Teleflora and other companies, the Plaintiff researched how to address the unwanted spam and learned of the TCPA. *Id*. at ¶ 27.

Despite this, Teleflora somehow blames Mr. McGonigle for filing lawsuits when companies like the Defendant are sending unwanted text messages *to him*. The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants careful scrutiny. *Outley v. New York*, 837 F.2d 587, 591-92 (2d Cir. 1988). "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (denying similar motion to dismiss in TCPA case); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

Merely because Mr. McGonigle identified the company calling him illegally deprives him of standing no less "than the purchase of a burglar alarm would indicate that the homeowner

wanted her house to be broken into." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying MSJ in TCPA case related to a similar argument). While the Defendant is "understandably frustrated" by the fact they are being sued, he is doing "exactly what Congress intended—enforcing the law." *Id.* Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs who prove their cases to end up worse off than before the defendant injured them. Like the defendants in *Cunningham*, Defendant "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Cunningham*, 251 F. Supp. 3d at 1196. "The Constitution requires no such result." *Id.*

And the fact that Plaintiff has chosen to exercise his rights under a federal statute designed to both protect him—and at the same time provide Defendant a simple and straightforward means for avoiding liability in precisely these circumstances (which Defendant intentionally failed to avail itself of)—does not convert Plaintiff's residential number into a business one. No court has ever found as much, nor will it. *Compare Katz v. Liberty Power Corp., LLC*, No. 1:18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793, at *30 (D. Mass. Sep. 24, 2019) (explaining that a consumer is within the TCPA's zone of interest unless he maintained the number called by the defendant solely for "attracting … calls to support his TCPA lawsuits") *with Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788-89 (W.D. Pa. 2016), in which, at summary judgment, a TCPA plaintiff was found to lack standing where she testified her sole purpose for owning over 35 cell phones was to run what she referred to as a TCPA litigation business, and that these 35 cell phones were used only to collect telemarketing calls and were not called by anyone else for any other purpose.

As a result, the fact that Plaintiff McGonigle has received a number of TCPA violative calls and texts from various companies that failed to take the steps that are readily available to them to avoid contacting people who have not agreed to be contacted in these situations and filed suits against them, as he has done here, does not alter the only reasonable conclusion to be drawn from Plaintiff's allegations—that he is a residential subscriber of his cellular telephone number.

## II.    Cell Phone Numbers are Protected under the TCPA's Do Not Call Provision

Defendant also argues that because the number Plaintiff uses for residential purposes is a cellular telephone number, as a matter of law, it is not protected under the TCPA's National Do Not Call Registry provision. This argument fails under the TCPA's plain language. Textually, Teleflora's argument conflates language Congress used in other provisions with the language Congress chose here.

When Congress wanted to limit the statute to a particular *technology*, it said so expressly (e.g., "residential telephone line" elsewhere in the TCPA). But in § 227(c), Congress protected a class of *people*—"residential telephone subscribers"—which is best read to mean subscribers who maintain and use their telephone service for residential (personal or household) purposes. The argument also runs contrary to the TCPA's express purpose. "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). Accordingly, "[t]he TCPA creates a private right of action for anyone who receives more than one call within a year from the same entity in violation of [the DNC Registry]." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 U.S.C. § 227(c)(5)).

Consistent with this, even ignoring the FCC's interpretations, all of the "district courts that have considered this issue post-*Loper* [*Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)] have reached the same conclusion: cellular telephone users can be considered 'residential telephone subscribers' under § 227(c). *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 2024 U.S. Dist. LEXIS 117544, 2024 WL 3293628, at *9 (S.D.N.Y. July 3, 2024) ('The Court therefore rejects Defendant's contention that Plaintiff falls outside the TCPA's protective ambit merely because he received the challenged calls on his cellphone.'); *Lyman v. Quinstreet, Inc.*, No. 23-CV-05056-PCP, 2024 U.S. Dist. LEXIS 123132, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024) ('the statutory text does not support [Defendant's] position, and instead is best read to include at least some cellular phone subscribers within the category of *residential telephone subscribers*')." *See Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 U.S. Dist. LEXIS 165900, at *14-19 (N.D. Ohio Sep. 16, 2024). This is because the TCPA's National Do Not Call Registry provision "provides protections to a certain type of phone user, regardless of the technology." *Id.* at *14; *Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024) ("The best reading of the word 'residential' is not that it modifies the 'telephone,' but rather that 'residential' and 'telephone' both modify the 'subscriber.' So instead of describing a 'subscriber' who owns a 'residential telephone,' Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' i.e., personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.").

"The inclusion of the term 'cellular telephone' in § 227(b) and its exclusion from § 227(c) does not indicate that Congress intentionally omitted cellular telephones from § 227(c)'s

protections; 'Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a *residential telephone **line***, as Congress used that term in the preceding subsection.'" *Id*,; *cf. Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 U.S. Dist. LEXIS 125001, at *3-9 (W.D. Va. July 25, 2018) (finding that under § 227(b)(1), "the structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line'").

Indeed, every court to address this issue after the Supreme Court's ruling in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), has reached the exact same conclusion—that cellular telephone numbers are protected under the TCPA's National Do Not Call Registry provision:

> Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of person rather than a type of technology. And although Defendant points out that Congress has occasionally used the term "cellular telephone service" and could have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term "residential telephone line" elsewhere in the TCPA. Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular type of subscriber. Thus, Defendant's argument is misplaced.

> Further, while not determinative, the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA…Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology.

*E.g., Isaacs v. USHealth Advisors, LLC*, No. 3:24-cv-00216-LMM, 2025 U.S. Dist. LEXIS 152625, at *7-9 (N.D. Ga. Aug. 7, 2025) (cleaned up); *Ferrell v. Colourpop Cosmetics, LLC*, No. 2:25-cv-01324, 2025 U.S. Dist. LEXIS 140893, at *16-17 (C.D. Cal. July 22, 2025) ("In 1991,

when the TCPA was enacted, Webster's Dictionary defined 'residential' as 'used as a residence or by residents.' *See Wilson v. Hard Eight Nutrition LLC*, No. 6:25-cv-00144-AA, 2025 U.S. Dist. LEXIS 122504, 2025 WL 1784815, at *5 (D. Or. June 27, 2025) (quoting Residential, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY).

The Supreme Court and other cases Defendant cite do not support a different conclusion. In fact, none of those cases addressed the statutory interpretation question present here. For example, in *Facebook, Inc. v. Duguid* the Supreme Court did not reference 47 C.F.R. § 64.1200(c)(2) or 47 U.S.C. § 227(c)(5), or use the word "residential" even in passing. *See* 592 U.S. 395 (2021). Considering the Court's holding—"that a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called," *id*. at 409—it had no reason to.

And this conclusion is underscored by the court's analysis in *Moore v. Triumph CSR Acquisition, LLC*, No. 23-cv-4659, 2023 U.S. Dist. LEXIS 220876 (N.D. Ill. Dec. 12, 2023), in which the court interpreted a different provision of the TCPA to find that a "residential telephone line" and "cellular telephone service" are not the same thing. *Id*. at *3-6 ("Moore has no claim under subsection 227(b)(1)(B) based on calls to her cell phone, because that provision applies only to a 'residential telephone line.' … A neighboring provision, subsection 227(b)(1)(A)(iii), expressly covers 'cellular telephone service,' but subsection 227(b)(1)(B) does not. … A cellular phone and a residential phone are not the same thing. … Courts widely hold that a cell phone is not a "residential telephone line" within the meaning of subsection 227(b)(1)(B)"). Here, the TCPA provision at issue does not limit claims based on the type of *device* or *line* to which calls are made, and instead expressly protects *subscribers*.

Ultimately, as one Court put it, addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025). This Court can—and should—reach the same conclusion here: the SAC plausibly alleges Plaintiff is a "residential telephone subscriber" under § 227(c) because the number is used for residential (personal or household) purposes, regardless of whether the device is cellular.

### III.    Text Messages Are "Calls" Under the TCPA

Defendant contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. The Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin* disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".). "The Supreme Court ratified the FCC's interpretation that a text message was a call for the purposes of the TCPA in *Campbell-Ewald v. Gomez* [.]" *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 198 (D. Mass. 2021). Indeed, "it is unlikely that the Court would stay silent about any serious concerns that robotexts were an invalid ground for TCPA recovery in a case construing the same statute." *Id.* at 199. "Furthermore, … Justice Kavanaugh's plurality opinion in *Barr* cited the FCC's regulations applying the TCPA to text messages as the current applicable legal standard." *Id.* (citing *Barr v. American Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335, 2344 n.1, 207 L. Ed. 2d 784 (2020)). "The First, Second, Seventh, Ninth, and Eleventh Circuits have either adopted Judge Ginsburg's remark as black letter law rather than dicta or had already held that the TCPA included text messages before *Campbell-Ewald*." *Id.* at *6 (collecting cases).

"In addition to the Supreme Court and the FCC, *Congress* has also made clear the TCPA's

applicability to text messages." *Williams v. Myler Disab., LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, at n. 2 (W.D.N.C. Nov. 12, 2020) (emphasis added) (citing *Pallone-Thune TRACED Act*, (the "TRACED Act") PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)"). Specifically, when Congress amended the TCPA in 2019 with the TRACED Act, it adopted the FCC's interpretation, instructing the FCC to prescribe regulations related to "a call made or *a text message* sent in violation of [227(b).]" 47 § 227(i)(1)(A) (emphasis supplied).

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40 (2009). "Where, as here, 'Congress has not just kept its silence by refusing to overturn the administrative construction, but has ratified it with positive legislation,' we cannot but deem that construction virtually conclusive." *Commodity Futures Trading Com v. Schor*, 478 U.S. 833, 846 (1986) (quoting *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 380-81 (1969); citing *Bell v. New Jersey*, 461 U.S. 773, 785, and n.12 (1983)). When Congress amended the TCPA in 2019, not only was it aware that the FCC and every court had interpreted the statute to cover text messages, it *ratified* that interpretation with an explicit reference to text messages in the amendment. Because Congress has spoken directly on the issue, the application of the TCPA to text messages is all but conclusive and reason alone to reject Defendant's position.

Just last month, the Southern District of Texas addressed the same threshold question presented here—whether "telephone calls" under 47 U.S.C. § 227(c) encompass promotional text messages sent to numbers listed on the National Do-Not-Call Registry—and answered it yes in

*Alvarez v. Fiesta Nissan, Inc.,* 2026 U.S. Dist. LEXIS 1415 (S.D. Tex. Jan. 26, 2026). There, the court explained that the "true problem" is not statutory ambiguity, but the reality that "technology has done more to change [telephones] than [Congress] has done to change § 227(c)(5)." *Id.* at *8–9 (*quoting In re Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987) (Easterbrook, J.)).

Applying ordinary-meaning principles anchored to 1991 usage, *Alvarez* reasoned that the contemporaneous definition of "call"—"to get or try to get into communication by telephone"—is "capacious," and that sending a text message is plainly an effort "to get into communication by telephone." *Id.* at *9–10 (quoting *Webster's Ninth New Collegiate Dictionary* (1990)). And *Alvarez* rejected the defense premise that because modern speakers distinguish between "calls" and "texts," Congress must have excluded texts from the statutory term "telephone call," emphasizing that later-evolving linguistic conventions cannot narrow a statute's original scope: "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Id.* at *12–13 (quoting *Yeskey*, 524 U.S. 206, 212 (1998)).

Finally, *Alvarez* tied the § 227(c)(5) cause of action to the rules it enforces—"the regulations prescribed under this subsection"—and to Congress's definition of "telephone solicitation" as the initiation of a "telephone call or message" to encourage a commercial transaction, concluding that "both the original text and the context" support reading § 227(c) to include text messages within its prohibition on violative "telephone calls" to numbers on the National Do-Not-Call List. *Id.* at *15–17.

And the Court should reach the same conclusion here for the same reasons.

### a. Section 227(c) prohibits unwanted telephone solicitations of all kinds, including text messages.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added).

That definition plainly encompasses modern text messages. As further explained below, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[2] So a "message" can be spoken *or* written. More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress presumably referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025).

___
[2] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But, as just explained, the statute *does* explicitly cover any "telephone solicitation," which is broadly defined to include any "call or message." 47 U.S.C. § 227(a)(4). "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024).

### b. Just as § 227(c)'s substantive provisions regulate text messages, the private right of action in § 227(c)(5) authorizes suit based on text messages.

Section 227(c)(5) authorizes suit when a person receives more than one "telephone call" in violation of "the regulations prescribed under this subsection." The regulations prescribed under § 227(c), however, prohibit initiating "telephone solicitations" to DNC-registered subscribers. 47 C.F.R. § 64.1200(c)(2). Congress defined "telephone solicitation" to include the initiation of a "telephone call or message." 47 U.S.C. § 227(a)(4). Thus, a telemarketing text message sent in violation of the DNC regulations necessarily triggers § 227(c)(5)'s private right of action.

Section 227(c)(5) grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network*, LLC, 925 F.3d 643, 650 (4th Cir. 2019). Accordingly, the FCC has recognized since 2003 that when the TCPA says "call," it means not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14115 ¶ 165. And many courts have reached the same conclusion. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass

of § 227(b)(1)(A)(iii).”); *Satterfield*, 569 F.3d at 954 (holding “that a text message is a ‘call’ within the TCPA”); *Dawson v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wash. 2024) (collecting cases).

That meaning of “call” is especially clear in nearby provisions. Notably, there is only one other reference to “calls” in § 227(c), and it has the same breadth as “telephone solicitations.” In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority “to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)” (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of “telephone solicitation.” *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395 (1991). So § 227(c)(1)(D)’s reference to “calls exempted under” the definition of “telephone solicitation” necessarily mirrored that definition— which, as explained above, broadly encompasses a “telephone call or message” and thus covers text messages even more clearly than the word “call” standing alone. 47 U.S.C. § 227(a)(4).

Not surprisingly then, “District court decisions have largely held that § 227(c) applies to text messages” based “on statutory construction, not agency deference”. *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *21 (S.D.N.Y. Dec. 5, 2025) (collecting cases).

The cases Teleflora cites do not dictate a different conclusion. Teleflora relies on *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764 (C.D. Ill. 2025) and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025), both courts found it impossible to read “call” in anything but the familiar colloquial sense, and so concluded that the “analysis begins and ends there.” *Davis*, 2025 WL 2491195, at *1.

But *Jones* and *Davis* are unpersuasive. There, the court decided that a text message could not be a “call” for purposes of § 227(c)(5)’s private right of action because “[t]ext messaging was not an available technology in 1991,” and “in today’s American parlance, ‘telephone call’ means

17

something entirely different from 'text message.'" *Id.* at \*4. But that is not the right way to interpret a statute. As the Supreme Court has cautioned—"modern intuition" doesn't always match "evidence of [a] term's meaning at the time of [a statute]'s adoption." *New Prime Inc.*, 586 U.S. at 114. When there's a mismatch, the original meaning of the text is what controls, not present-day usage. *See id.* at 114–16. So using the word "call" when one means "text" of course does sound odd to 2026 ears; unlike, say, the word "emoji," that meaning of the word "call" hasn't come to be part of the modern text messaging lexicon. But *Jones* and other cases go astray when they reflexively apply those present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[3]

That conclusion is reinforced by the only post-*McLaughlin* decision within the Fourth Circuit addressing this precise issue. In *Mey v. Liberty Home Guard, LLC*, 2026 U.S. Dist. LEXIS 739, \*16–20 (N.D.W. Va. Jan. 5, 2026), the court considered—and rejected—the same argument Teleflora advances here: that text messages are not actionable under § 227(c)(5).

The court began with the statutory text. Section 227(c) regulates "telephone solicitations," and Congress defined that term to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4) (emphasis added). The court emphasized that "[b]y explicitly including 'messages,' Congress made clear that the statute's protections extend beyond traditional voice calls." *Mey*, 2026 U.S. Dist. LEXIS 739, at \*17. That textual inclusion alone defeated the defendant's attempt to narrow § 227(c) to voice-only communications.

---

[3] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at \*1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of communication in 1991).

The court next examined the broader structure of the TCPA and Supreme Court precedent. It observed that the Supreme Court has repeatedly treated text messages as "calls" under the TCPA. See *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone … qualifies as a 'call'"); *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n.2 (2021) (assuming the statute extends to text messages). The court in *Mey* reasoned that there is "no reason to assign the same word a different meaning in Section 227(c), given that both provisions protect the same core interest: the consumer's right to be free from unwanted intrusions." 2026 U.S. Dist. LEXIS 739, at *18. In other words, the statute should be read coherently across its provisions.

The court also addressed the post-*Loper Bright* and post-*McLaughlin* landscape. It concluded that the FCC's longstanding interpretation that texts qualify as calls remains entitled to, at minimum, "appropriate respect," and where Congress expressly delegated authority—as it did in § 227(c)—to deferential review. *Id.* at *18–19. The FCC's inclusion of text messages, the court explained, is "not an expansion of statutory text, but a reasonable implementation of Congress's mandate" to protect consumer privacy through do-not-call systems. *Id.* at *18.

Applying ordinary-meaning principles, the court further held that the term "call" naturally encompasses text messaging. Citing long standing TCPA precedent based on a dictionary definition, it explained that a call is "to communicate with or try to get into communication with a person by telephone," and that text messaging is indisputably communication by telephone. *Id.* at *19. That analysis applied "regardless whether deference to the agency's interpretation is appropriate or not." *Id*.

Finally, the court grounded its reasoning in the TCPA's purpose. Congress enacted the statute to protect consumers from unwanted telemarketing intrusions. Unsolicited text messages,

the court concluded, "invade the privacy and disturb the solitude of their recipients" in precisely the same way as voice calls and therefore fall within the DNC protections. *Id.* at *20.

The same conclusion was reached in a recent decision involving this very Plaintiff in a case originally filed in this district. In *McGonigle v. ShoppersChoice.com, L.L.C.,* ECF No. 75, No. 25-152 (M.D. La. Feb. 13, 2026) (attached as Exhibit 1), the court denied a motion to dismiss asserting the same arguments Teleflora raises here: that § 227(c)(5) does not apply to telemarketing text messages and that a cellular number cannot qualify as a "residential" subscriber.

Applying *Loper Bright* and *McLaughlin*, the court made clear that the question is one of ordinary statutory interpretation. It rejected the premise that modern distinctions between "calls" and "texts" control the analysis, explaining that statutory meaning is fixed at enactment and that general statutory terms can embrace later technological developments. Turning to the text of § 227(c)(5), the court grounded the cause of action in the statute's own language, which authorizes suit for violations of "the regulations prescribed under this subsection." It explained that those regulations prohibit "telephone solicitations," and that Congress defined "telephone solicitation" to include the initiation of a "telephone call or message." Reading the subsection as a whole, the court concluded that telemarketing text messages fall squarely within the conduct the statute regulates and enforces.[4] That decision involved the same Plaintiff, the same statutory provisions, and the same post-*McLaughlin* interpretive framework. It confirms that Teleflora's theory has already been rejected when applied to these very allegations.

---

[4] The Court also rejected the categorical exclusion of cellular numbers from § 227(c)'s protections, holding that Plaintiff adequately alleged "residential telephone subscriber" status based on his pleaded personal and household use of the number after moving from Florida to Virginia. Because the complaint plausibly alleged both residential status and receipt of multiple telemarketing texts in violation of the DNC regulations, the court denied dismissal in full.

Similarly, as explained above, it's irrelevant that Congress couldn't have text messages specifically in mind in 1991. "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Skopos Fin.*, 2025 WL 2029274, at *4. *Jones* also disregarded the FCC's longstanding interpretation of "call" because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising. The Do Not Call List provisions are built around the broadly defined term "telephone solicitation." 47 U.S.C. § 227(c)(1), (3). The standalone word "call" is more central to § 227(b)'s autodialer and robocall prohibitions, or in associated definitional provisions.[5] That's why the FCC first determined that "call" includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that "call" has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023). But that doesn't mean there's any difference between § 227(b) and § 227(c) on this question. And neither *Jones* nor Teleflora identifies any reason why there would be. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text").

The courts' analysis in *Jones* and *Davis* systematically excludes the experiences and needs of deaf and hard-of-hearing individuals, who have used text-based communication for telephone calls since long before the TCPA was enacted in 1991. For millions of Americans who rely on TTY/TDD (teletypewriter/telecommunications device for the deaf) technology or who are deaf or

---

[5] *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395–400 (using "call" or "calls" in the original text of 47 U.S.C. § 227(a)(1), (a)(3), (b)(1)(A), (b)(1)(B), (b)(2)(A), (b)(2)(B), (c)(1)(D), (c)(5), (d)(1)(A), (d)(3)).

have other hearing disabilities, text messages are not just "telephone calls," they are often the *only* way these individuals can make and receive "telephone calls."

But even putting aside this reasoning, it is incorrect to assert that the original public meaning of "telephone calls" extended only to voice-based communications when the statute was enacted in 1991. It did not. *Jones'* and *Davis'* premise, that text messaging via telephones did not exist in 1991, is false when one considers the universe of text-based telephone communications that existed in 1991, and, indeed, had existed for decades before. Both *Jones* and *Davis*, as well as the other two decisions cited by the Defendant, state that interpreting "telephone calls" to include text messages would amount to updating the statute to reflect technological changes. But it is just as clear that *Jones* and *Davis* abdicated their interpretative responsibility, not just in terms of a demonstrably wrong textual analysis, but also in ignoring the statutory framework and purposes of the TCPA. The TCPA's purpose was and is to protect consumers from unwanted telephone solicitations that invade their privacy and disrupt their daily lives. Unwanted text messages, particularly to individuals who are deaf and hard-of-hearing, are every bit as intrusive as unwanted voice calls, and perhaps more so, given the additional challenges implicit in living a life with hearing loss. To exclude text messages from the TCPA's protections based on a hyper-literal and historically ignorant reading of "telephone call" would thus defeat the TCPA's purpose. When Congress enacted the TCPA in 1991, it did so with full knowledge that deaf individuals used text-based telephone communication via TTY/TDD devices, having *required* telephone companies to provide such devices and services a year prior. Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication." This choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls."

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 FCC Rcd. 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm its "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

### c. *Even if the statute left room to doubt that a text message can be a violation (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day.*

Since 2003, the FCC held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls") (the "2003 Order"). In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

To be sure, mere ambiguity is no longer automatic cause to defer to an agency. *See Loper*

*Bright*, 603 U.S. at 412–13 (overruling *Chevron*). But courts still defer when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility, such as 'appropriate' or 'reasonable.'" *Id.* at 395. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within those outer bounds. *Id.*; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

This case falls at the intersection of *two* such express delegations. Mainly, § 227(c) itself is an express delegation of rulemaking discretion to the FCC: Congress tasked the FCC with evaluating alternative approaches based on (among other things) their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). It then told the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphases added). That language grants discretionary authority to "fill up the details," accompanied by "flexibility" to determine what rules will best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395. Congress in 1993 asked the FCC to decide whether cell phone companies are "common carriers" whose subscribers have rights under the TCPA, and the FCC did. *Compare* 47 U.S.C. § 332(a)(1)(A), *with* 47 U.S.C. § 227(c)(3). That expressly delegated the FCC "authority to give meaning to a particular statutory term." *Loper Bright*, 603 U.S. at 395. If Congress didn't speak on this issue, then it clearly looked to the FCC's expert judgment to supply an answer. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016) (express delegation was evidence that Congress expected telecommunications technology to evolve).

It follows that the way to honor Congress's intent here is to "respect [that] delegation" and

affirm the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395. Recognizing as much, courts have continued to defer to the FCC's well-reasoned decision to allow registration of cell phone numbers, even after *Loper Bright* and *McLaughlin*. *See, e.g.*, *Harriel*, 2025 WL 2379617, at *2; *Wilson*, 2025 WL 1784815, at *5; *Lirones*, 2024 WL 4198134, at *7; *Lyman*, 2024 WL 3406992, at *4. This court should do the same.

As explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. *See supra*. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and aligns with both its longstanding determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 F.C.C. Rcd. at 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm that "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40).

In any event, the FCC's interpretation is, at the very least, an "informed judgment" that should be accorded "great weight" by this court. *Loper Bright*, 603 U.S. at 388; *see Skidmore v. Swift Co.*, 323 U.S. 134, 139–40 (1944). The FCC's position is grounded in the agency's specialized expertise, consistent across decades, and well-reasoned. So, it has all the hallmarks of an agency decision with "the power to persuade." *Loper Bright*, 603 U.S. at 388.

In fact, in *Jones v. Blackstone Med. Servs., LLC*, which Defendant cites in support of its motion, court found "[t]he Plaintiffs' position — that text messages are calls as the latter term is

used in the TCPA — *is an eminently reasonable one*, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." No. 1:24-cv-01074-JEH-RLH, 2025 U.S. Dist. LEXIS 138371, at *14 (C.D. Ill. July 21, 2025) (emphasis supplied).

Had the court in that case applied the correct standard of review to the FCC's action, it should have followed the FCC's interpretation because nothing about it is arbitrary and capricious. *See Zimmer Radio of Mid-Missouri, Inc. v. FCC,* 145 F.4th 828 (8th Cir. 2025) ("An agency action may be arbitrary and capricious in many ways: by (1) 'rel[ying] on factors which Congress has not intended it to consider,' (2) 'entirely fail[ing] to consider an important aspect of the problem,' (3) 'offer[ing] an explanation for its decision that runs counter to the evidence before the agency,' or (4) offering an explanation that 'is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" (quoting *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1000 (8th Cir. 2018)).

Even under the standard Defendant advances, this Court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). As *Loper Bright* explains, a court may apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Because, as discussed above, Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, "unhesitatingly afford deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Moreover, as explained, the FCC's interpretation of a text message being a call is not at odds with the statute. Because the TCPA does not define the term "call", courts interpret the word

"according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id.* (quoting *Satterfield*, 569 F.3d at 953-54). "Other courts have adopted this definition in the TCPA context." *Id.* (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id.* (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)). The Court in *Wilson v. Skopos Fin., LLC*, 2025 U.S. Dist. LEXIS 138638, *10-13 (D. Or. July 21, 2025) denied an identical motion to dismiss holding:

> [T]he FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." ...With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC

27

> Registry's protections. It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry... . On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

This Court should hold the same.

## CONCLUSION

For the reasons set forth above, Teleflora's Partial Motion to Dismiss should be denied. The Second Amended Complaint plausibly alleges that Plaintiff is a "residential telephone subscriber" because he maintains and uses his cellular number exclusively for personal and household purposes, and that Teleflora initiated more than one telephone solicitation to that DNC-registered number without prior express consent. Neither the TCPA's text nor its structure supports Teleflora's invitation to restrict § 227(c) to landline technology or to exempt telemarketing text messages from the Do Not Call framework. To the contrary, the statutory definition of "telephone solicitation," the implementing regulations, and the weight of post-*McLaughlin* authority confirm that the DNC protections apply to residential cell subscribers and to text-message solicitations. Accordingly, Plaintiff respectfully requests that the Court deny Teleflora's Partial Motion to Dismiss in full.

Dated: February 20, 2026                    PLAINTIFF,
                                            By his attorney

                                            */s/ William Robinson*
                                            William Robinson
                                            VSB:76098
                                            319 N. Piedmont St., #1
                                            Arlington VA. 22203
                                            ph. 703-789-4800
                                            wprlegal@gmail.com

                                            Anthony I. Paronich
                                            Paronich Law, P.C.

28

350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

On February 20, 2026, I electronically served the foregoing document on counsel of

record for the Defendant through the Court's CM/ECF System.

*/s/ William Robinson*

William Robinson