UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, *on behalf of himself and others similarly situated,*<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>TELEFLORA LLC,<br><br>　　　　　　　　Defendant. | Civil Action No.: 1:25-cv-00807 MSN-WEF |

**TELEFLORA'S REPLY BRIEF IN SUPPORT OF MOTION TO
DISMISS COUNT I OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.　　INTRODUCTION**

Defendant Teleflora LLC's ("Teleflora") Motion presents two straightforward legal questions: (1) whether a text message is a "telephone call" under 47 U.S.C. § 227(c)(5) of the TCPA, and (2) whether a cell-phone user is a "residential telephone subscriber." Based on the TCPA's plain text, the answer to both is, resoundingly, "no."

First, as a matter of plain English, the ordinary meaning of "telephone call" when the TCPA was enacted in 1991 could not have included "text messages," because no such thing existed. And, whether in 1991 or now, no ordinary person would think of a text message as a "telephone call." The Supreme Court has not held otherwise, despite Plaintiff's suggestion to the contrary. And, while the FCC interpreted the term "calls" to include text messages <u>years after</u> the TCPA's enactment, that belated interpretation—which, as an aside, is neither well-reasoned nor rooted in the exercise of any technological expertise—does not bind this Court (*see McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025)). The

1

FCC's orders and regulations that purport to expand the scope of the TCPA beyond its textual foundations to include text messages are not entitled to deference. *Id*. *See also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400-01 (2024).

Indeed, numerous courts in recent months have **rejected** the FCC's interpretation and have instead correctly held that a "text message" is not a "telephone call" for purposes of section 227(c)(5). *See Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1272 (N.D. Fla. Aug. 26, 2025); *Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899-900 (C.D. Ill. July 21, 2025) (on appeal); *El Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, *1-*2 (M.D. Fl. Oct. 24, 2025). In fact, two other district courts, in cases in which Plaintiff's attorney is counsel of record, granted dispositive motions precisely on these grounds, in just the weeks prior to the filing of this Reply. *See Radvansky v. 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3 (N.D. Ga. Feb, 17, 2026) (granting defendant's motion to dismiss and holding that "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages"); *Radvansky v. Kendo Holdings, Inc.*, Case No. 3:23-cv-00214-LMM, Dkt. 57, slip. op. at 4-5 (N.D. Ga. Feb. 12, 2026) (granting defendant's motion for judgment on the pleadings and holding that "'the statutory text here is clear, and a text message is not a telephone call'")[1] (quoting *Davis*, 797 F.Supp. 3d at 1273 and citing *El Sayed*, 2025 WL 2997759, at *2). This Court should do the same.

Second, a cell-phone user is not a "subscriber" of a "residential telephone" because that term, as used in the TCPA, refers to a home landline, not a wireless phone.

Under either or both grounds, Teleflora should prevail and Count I of Plaintiff's Second Amended Complaint ("SAC") should be dismissed with prejudice.

---

[1] Teleflora attaches the Court's order in *Kendo Holdings* as **Exhibit A**.

## II. ARGUMENT

### A. Count I of Plaintiff's SAC Should Be Dismissed With Prejudice Because A "Text Message" Is Not a "Telephone Call" And, Therefore, Does Not Give Rise to A Private Right of Action Under Section 227(c)(5) of the TCPA

#### 1. The plain and ordinary meaning of "telephone call" at the time of section 227(c)(5)'s enactment did not encompass a "text message"

Section 227(c)(5) confers a private right of action only upon "[a] person who has received more than one **telephone call** within any 12-month period…" (emphasis added). The starting point for interpreting the TCPA is its plain text. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (statutory interpretation "begins with the statutory text, and ends there as well if the text is unambiguous"). It is "'a fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning…at the time Congress enacted the statute.'" *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979) (ellipses in original)). Indeed, "the whole point of having written statutes" is that "'every statute's meaning is fixed *at the time of enactment*.'" *Loper*, 603 U.S. at 400 (citing *Wisconsin Central*, 585 U.S. at 274) (emphasis added). Here, these straightforward statutory principles yield a straightforward conclusion: a text message is not a "telephone call."

As an initial matter, text messaging did not exist when the TCPA was enacted in 1991. *See Jones*, 792 F.Supp.3d at 899; Motion at 7-8. Therefore, it is impossible for the term "telephone call" to have meant "text message" in 1991, and to hold otherwise would violate the Supreme Court's mandate, which recognizes that a statute's meaning is fixed at the time of enactment. *See Loper*, 603 U.S. at 400. Even today, "telephone call[s]" are not text messages under any conceivable interpretation of the English language: "'No normal person refers to a text message, or thinks of a text message, as a 'call.' No ordinary user of the English language

3

would write the sentence 'John called Sue' intending to mean 'John sent a text message to Sue,' nor would any ordinary reader interpret the sentence in that manner." *Davis*, 797 F.Supp.3d at 1273. Given that this Court must interpret statutory terms based on their ordinary meaning at the time of enactment, that alone warrants dismissal of Count I of Plaintiff's SAC.

Five recent district court cases—including two involving Plaintiff's counsel—have held that a "text message" is not a "telephone call" for purposes of section 227(c)(5). *Davis*, 797 F.Supp.3d at 1272; *Jones*, 792 F.Supp.3d at 899-900; *El Sayed*, 2025 WL 2997759, *1-*2; *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3; *Kendo Holdings, Inc.*, Case No. 3:23-cv-00214-LMM, Dkt. 57, slip. op. at 4-5.[2] This Court should do the same.

Faced with the inescapable reality that text messages did not exist in 1991 and, therefore, could not have been encompassed by the phrase "telephone calls," Plaintiff instead invites this Court to analyze the statutory text of the TCPA through the lens of present-day meanings and his preferred policy preferences. *See, e.g.,* Opp. at 16-18, 21-22. This invitation contravenes consistent Supreme Court precedent. Indeed, Plaintiff's Opposition opens with a telling "analogy." Plaintiff compares the specific language of section 227(c)(5), affording a private right of action to "telephone calls[,]" to a theoretical statute prohibiting "vehicles" in a park and asking whether that theoretical statute would apply to a Cybertruck, a model of vehicle that did not exist at the time of the statute's enactment. Opp. at 1.

---

[2] Yet another district court, involving the same Plaintiff here, granted a motion to stay class discovery pending resolution of a motion to dismiss because it was "not clear" whether a "telephone call" "include[s] text messages[.]" *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *1-*2 (S.D. Fla. Jan. 15, 2026). Plaintiff subsequently dismissed his claims in that action. *See McGonigle v. Pure Green Franchise Corp.*, Case No. 0:25-cv-61164-AHS, Dkt. No. 32 (S.D. Fla. Jan. 23, 2026).

4

Plaintiff's analogy is a red herring that misstates the statutory question and reveals his flawed analysis. "Vehicle" is a broad, technology-neutral category term. "Telephone call" is not. Congress did not create a private right of action for any and all "communications" or "electronic transmissions." Rather, it created a private right of action specifically for violative "telephone calls." And a text message is not simply an updated version of a telephone call, as might be argued with WiFi telephone calls or VoIP telephone calls, like Skype—texting is an entirely new form of communication technology, akin to e-mail or the push notifications sent from phone apps. Plaintiff's analogy is thus rooted in false equivocation and confirms that he is asking this Court to legislate from the bench and read meaning into a statute where that meaning does not exist. The Court should decline this invitation, as its duty is not to expand statutory language where such language was not so intended, but, rather, to interpret the words Congress actually enacted. *See Duguid*, 592 U.S. at 409; *Loper Bright*, 603 U.S. at 400.

Plaintiff's Opposition also attempts to shift the Court's focus away from the plain statutory language in section 227(c)(5), which forms the basis of Count I of Plaintiff's SAC, instead to the definition of "telephone solicitation" used in a *different* provision of the TCPA, section 227(c)(1), (3), and specifically defined in section 227(a)(4) to mean a "telephone call or message[.]" Opp. at 15. This misguided argument actually proves Teleflora's point: Congress broadly defined "telephone solicitation" to mean both a "telephone call *or message*" in section 227(a)(4) (emphasis added), but then specifically used the more limited term, "telephone call," in section 227(c)(5), which necessarily limits the private right of action pursuant to which Plaintiff has brought suit.

As explained in *Davis*, "Congress's use of the phrase 'telephone call or message' in a neighboring provision only undermines [plaintiff's] position. It shows that Congress does not

5

use the term 'telephone call' to encompass all 'messages'…courts should 'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Davis*, 797 F.Supp.3d at 1274 (quoting *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1344 (11th Cir. 2025)). *See also 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4 ("construing these distinct phrases ['telephone solicitations' and 'telephone call'] identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage"). Simply put, regardless of how Congress defined a "telephone ***solicitation***" that might be regulated under the TCPA, "the private right of action Congress created exists only for those who received multiple 'telephone ***calls***.'" *Davis*, 797 F.Supp.3d at 1274 (emphasis added).

This straightforward question of statutory interpretation must begin and end with the text. Nothing in Plaintiff's Opposition changes the reality that text message communication did not exist in 1991 and, therefore, could not have been included in the plain meaning of a "telephone call" in section 227(c)(5). As a matter of textual interpretation, a text message is not a "telephone call," which provides an independent and sufficient ground to grant Teleflora's Motion to dismiss Count I of the SAC with prejudice.

        2.    <u>Congress Knows The Difference Between A "Telephone Call" And A "Text Message"</u>

Because, as an unambiguous question of statutory interpretation, a "text message" is not a "telephone call[,]" thereby vitiating Plaintiff's claim under section 227(c)(5), the Court's analysis need not proceed any further. However, this conclusion is further buttressed by Congress's own actions. While Plaintiff argues that certain congressional amendments to *other provisions* of the TCPA confirm a supposed implicit "ratifi[cation]" of FCC interpretation relative to section

6

227(c)(5), *see* Opp. at 12-13, Congress's amendment—and, by extension, its lack of amendment—actually reveal the opposite: "Congress has amended the TCPA as recently as 2019 to add the phrase 'text message' in a neighboring provision, § 227(e)(8)(C), and chose to leave § 227(c)(5) unamended…This distinction leads the Court to presume that Congress intended § 227(c)(5) to encompass only telephone calls because 'when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *1-800-Flowers.com, Inc.*, 2026 WL 456919, at *3 (citing *Kendo Holdings, Inc.*, No. 3:23-cv-00214-LLM, slip op. at 6 and quoting *Sunshine State*, 143 F.4th at 1344).

Congress's amendment of section 227(e) to include "text messages" demonstrates its understanding of the difference between a telephone call and a text message. *El Sayed*, 2025 WL 2997759, at *2 ("[t]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction"). The Court should conclude that these differing terms, or absence of the terms, was intended by Congress. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024). This further confirms that Plaintiff cannot assert a private right of action under 227(c)(5).

### 3. Plaintiff's authorities are inapposite and fail to withstand analytical scrutiny

Plaintiff's Opposition proclaims that "[t]he Supreme Court, every Circuit Court, and the majority of district courts, even after *McLaughlin* disagree with Defendant's position." Opp. at 12. This is incorrect. And, Plaintiff's cited authorities are premised upon faulty logic, improper deference to the FCC (particularly given that many of those cases arose before the Supreme Court eliminated *Chevron* deference, transforming the legal landscape entirely), or are inapplicable to the statutory provision pursuant to which Plaintiff has brought suit.

For instance, Plaintiff suggests that *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), decided before the *Chevron* doctrine was overturned, holds that a text message is a telephone call for all purposes under the TCPA. Opp. at 12. Yet, the question of whether a text message constitutes a telephone call was not disputed in *Campbell-Ewald*. *See 1-800-Flowers.com*, 2026 WL 456919, at *4 ("the Supreme Court assumed but did not actually decide that issue in *Campbell-Ewald* and did not address the 'telephone call' language at issue in § 227(c)(5) but the broader prohibition on 'any call' in § 227(b)(1)(A)(iii)"). In addition, the Supreme Court cited *Campbell-Ewald* in *Duguid*, another case that preceded the overturning of the *Chevron* doctrine, when noting that "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," stressing that, therefore, the Court "assume[d] that it does without considering or resolving that issue." *Duguid*, 592 U.S. at 400, fn. 2.

Plaintiff further relies on *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009). Opp. at 15. However, *Satterfield*, which analyzed 47 U.S.C. § 227(b)(1)(A)), referenced a 2002 dictionary definition of "call" and concluded that "Congress could not have spoken clearly to this issue in 1991 when the statute was enacted" because "text messaging was not available" when the TCPA was enacted. *Id*. at 954. Finding "the TCPA is silent to the issue at hand," *Satterfield* deferred to the FCC's 2003 interpretation. *Id*. But, congressional silence does not render a term "ambiguous" (as *Satterfield* held), where the ordinary meaning of a telephone call in 1991 could not have referred to text messages, nor does that court's acontenxtual dictionary definition supplant the statute's plain, unambiguous meaning.

Plaintiff's reliance upon *Wilson v. Better Mortgage Corp.*, 2025 WL 3493815 (S.D.N.Y. Dec. 5, 2025), *see* Opp. at 17, fares no better. First, the court conflated the term "telephone call" used in section 227(c)(5) with the term "telephone solicitation" used in section 227(c)(1) and

8

defined in section 227(a)(4). *Wilson*, 2025 WL 3493815 at \*7-\*8. Second, it conflated the term "telephone call" used in section 227(c)(5) with the term "call" used in section 227(b). *Id*. Third, it fails to follow the Supreme Court's directive that "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at 400. Binding case law holds that the definition of "telephone call" was fixed at the time of enactment in 1991—thus, a "telephone call" under section 227(c)(5) cannot encompass the entirely new form of text message communication, which simply did not exist when the TCPA was enacted. Thus, the decision is based on "faulty reasoning." *1-800-Flowers.com, Inc.*, 2026 WL 456919, at \*4.

Plaintiff also relies upon *Mey v. Liberty Home Guard, LLC*, 2026 WL 486556 (N.D.W.V. Jan. 5, 2026). Opp. at 18-20. However, as a primary basis of its decision, the *Mey* court focused on the term "telephone solicitation" used in section 227(c)(1) and defined in section 227(a)(4), instead of focusing on the term "telephone call" used in section 227(c)(5), which is the provision applicable in Plaintiff's case. *Mey*, 2026 WL 486556, at \*5-\*6. The phrases are not identical, and Congress's decision to use different language in the respective sections means that they should not be interpreted to mean the same thing. It is true that section 227(c)(1) uses the term "telephone solicitations," which is defined to include "messages," but section 227(c)(5)—the specific provision under which Plaintiff pursues a private right of action here—refers solely to "telephone calls." *See* 47 U.S.C. § 227(a)(4), (c)(1); *cf.* 47 U.S.C. § 227(c)(5). Thus, Congress's decision to use a different term "in a neighboring provision only undermines [Plaintiff's] position" because "[i]t shows that Congress does not use the term 'telephone call' to encompass all 'messages.'" *Davis*, 797 F. Supp. 3d at 1274.

Moreover, *Mey* treats "telephone call" in section 227(c)(5) interchangeably with the term "call" used in section 227(b). *Mey*, 2026 WL 486556, at \*5. Plaintiff has sued Teleflora solely

9

under section 227(c)(5), and the broader scope of Section 227(b)'s prohibition on "any call" should not be transposed to section 227(c)(5)'s more specific definition of "telephone call." Additionally, *Mey* relies upon pre-*McLaughlin* and *Loper Bright* authority, improperly defers to FCC interpretation, and improperly broadens the expressly limited statutory text. *Id*. at *6-*7.

Plaintiff also relies on *Alvarez v. Fiesta Nissan, Inc.*, 2026 WL 202930 (S.D. Tex. Jan. 26, 2026). Opp. at 14. As an initial matter, and as highlighted in the Motion (*see* Motion at 15, fn, 7), the *Alvarez* court acknowledged that "no ordinary person would use the word 'telephone call' to refer to a text message[.]" *Alvarez*, 2026 WL 202930, at *4. And, at least one recent court has already rejected *Alvarez* (among other of the cases Plaintiff cites) as "inherently flawed[,]" including because "text messages did not yet exist when the statute was originally enacted." *See 1-800-Flowers.com, Inc.*, 2026 WL 456919, at *4 ("the Court is not persuaded by the several district court decisions…concluding that 'telephone call' in § 227(c)(5) does include text messages because the reasoning underlying these decisions [including *Alvarez*] is inherently flawed"). As the *1-800-Flowers.com, Inc.* court recognized, the plain language is inescapable and buttressed by the absence of the existence of texting technology in 1991. *Id*. And, by treating "telephone solicitations" and "telephone call" as interchangeable, the *Alvarez* court renders Congress's distinct phrasing superfluous and, in so doing, rewrites the statutory text.

What is more, *Alvarez* fails to meaningfully address Congress's intentional choice to create a limited private right of action specific to telephone calls. As the *Davis* court explained,

> Congress can (and does) provide private rights of action narrower than its full breadth of regulation…[Section] 227(c)(5) proves the point. It limits the private right to those who received two or more unwanted calls, ***even when a single call would violate the TCPA***…Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter. Whatever its reasoning, it clearly limited the private right to those receiving 'telephone calls.'

10

*Davis*, 797 F. Supp. 3d at 1274 (emphasis added).  Plaintiff's reliance upon *McGonigle v. Shopperschoice.com, L.L.C.*, 2026 WL 413198 (M.D. La. Feb. 13, 2026), *see* Opp. at 20, is likewise misplaced.  Indeed, *Shopperschoice.com* relied almost entirely on *Alvarez* and fails for the same reasons.  *Id*. at *4-*6 ("[t]his Court agrees with its sister court's analysis [in *Alvarez*] and adopts it herein").

Plaintiff's other cited authorities, like *Wilson v. Skopos Fin., LLC*, 2025 WL 2029274 (D. Or. July 21, 2025) (*see* Opp. at 15, 21, 27), fail to account for the demise of the *Chevron* doctrine and the need to "exercis[e] independent legal judgment" in endorsing the FCC's view.  *Loper Bright*, 603 U.S. at 401.  Indeed, *Wilson* noted, "**the FCC** has expanded the TCPA to apply to text messages" and failed to so much as mention *Loper Bright* or *McLaughlin*.  *Wilson*, 2025 WL 2029274, at *4 (emphasis added).

This Court's prerogative is to find the *best* interpretation, not merely a remotely plausible interpretation.  *See, e.g.*, *Jones*, 792 F. Supp. 3d at 901 (rejecting a "reasonable" interpretation in favor of the best interpretation); *Loper Bright*, 603 U.S. at 400 ("[i]n the business of statutory interpretation, if it is not the best, it is not permissible").  Plaintiff's authorities seek to contort the plain, unambiguous language of the TCPA.  Indeed, if Plaintiff is correct in his expansive view, "telephone call" would subject virtually all modern communication to the TCPA simply because such communications are received on a phone, like app-to-app messages, push notifications and emails.  This is not what Congress meant in 1991.  The TCPA is not a free-wheeling statute regulating all communication received on a handset, nor can it be malleably applied to effectuate Plaintiff's policy goals.  *See Duguid*, 592 U.S. at 409; *Jones*, 792 F. Supp. 3d at 901 ("The Court confines itself to its assigned role which does not include legislating").  As

11

Teleflora's cited authorities confirm, plain language ends the inquiry. A text message was not a "telephone call" in 1991, nor is it now.[3]

                    4.        <u>Deference to the FCC's interpretations is not warranted</u>

Plaintiff also argues this Court should follow FCC interpretations equating text messages to telephone calls. Opp. at 23-28. The Court should decline this invitation. First, the plain meaning of "telephone call" clearly does not encompass a "text message" and, therefore, the inquiry is at an end. Second, the FCC's rule extending do-not-call protection to text messages should not be afforded any weight, including because this construction of the law was issued years after the TCPA was enacted. Plaintiff cannot sidestep the plain language of section 227(c)(5) by relying on the FCC's belated implementing regulations to read into the statute a private right of action for text messages that is not there.

Prior to the Supreme Court's decision in *Loper Bright*, if a court determined that a statute was silent or ambiguous on a specific issue, the court would defer to an agency's interpretation if it was based on a permissible construction of the statute (the "*Chevron* doctrine"); however, the Supreme Court overruled the *Chevron* doctrine in *Loper Bright*. *Loper Bright*, 603 U.S. at 400, 411-12. Now, courts must exercise their independent judgment. *Id*. at 395, 400. When faced

---

[3] Plaintiff's Opposition omits reference to the recent Ninth Circuit decision in *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. Jan 13, 2026) (the "RNC Decision"). However, Teleflora anticipates that Plaintiff may nonetheless raise the RNC Decision at the hearing on this Motion, given that Plaintiff's recently filed Motion to Transfer Venue (Dkt. 56) argues that this action should be transferred to the Central District of California because the law in the Ninth Circuit is purportedly more favorable to Plaintiff, with citation to the RNC Decision. *See* Dkt. 56 at 6. However, the RNC Decision is not controlling authority in this district and is not otherwise persuasive: it concerns section 227(b), involves an expansive private right of action under section 227(b)(3) that is applicable to *any* violation of section 227(b), and fails to interpret the meaning of the specific term "telephone call" as used in section 227(c)(5). *See RNC Decision*, generally, at 1120-27. This case, on the other hand, involves a *limited* private right of action under 227(c)(5) applicable solely to "telephone calls[.]" *See 1-800-Flowers.com Inc.*, 2026 WL 456919, at *3-*5.

with a "doubtful and ambiguous" law, a court may accord due respect to an agency interpretation where, for example, the agency issued a "contemporaneous construction" of the law. *Id*. at 385-86.

Here, section 227(c)(5) is not ambiguous. However, even if it were, this Court should not rely on unreasoned agency interpretation issued *years* after enactment of the TCPA. As an initial matter, the 2003 Order cited by Plaintiff (*see* Opp. at 23) does not even purport to interpret the phrase "telephone call" in section 227(c)(5)'s private right of action. Rather, it addressed the phrase "any call" in the TCPA's autodialer provision, codified in subsection (b). *See* 47 U.S.C. § 227(b)(1)(A). Even if the FCC's interpretation of "call" in the 2003 Order were relevant to the phrase "telephone call" in section 227(c)(5)—though, it is not—the order was not thoroughly reasoned. It simply asserted without explanation that "*any call*" includes "voice calls and text calls…for example, short message service (SMS) calls[.]" *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 FCC Rcd. 14014 (July 3, 2003), ¶ 165. The 2003 Order failed to address the fact that ordinary users of the English language do not refer to text messages as "text calls." Nor did it explain how a "text" can be a "call" or otherwise elaborate on this novel term. It also lacked any exercise of the FCC's technical expertise. Such an unreasoned proclamation lacks the power to persuade. The same is true for the other FCC guidance Plaintiff cites (*see* Opp. at 21). Respect for the FCC's interpretation of the TCPA does not require this Court to accept an interpretation of section 227(c)(5) that conflicts with the plain meaning of clear statutory text. *See Loper Bright*, 603 U.S. at 399.

And, at any rate, due respect is less relevant when the agency interpretation comes long after the statute's enactment. As *Loper Bright* recognized, "due respect" is "especially warranted

13

when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." 603 U.S. at 385-88, 394. But the FCC's 2003 order—issued 12 years after the statute was enacted—is not contemporaneous with the enactment of the TCPA in 1991. *See In Re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014 (2003). And the FCC's extension of the Do-Not-Call Registry regulations to text messaging did not occur until the FCC's 2023 order, more than 20 years later. *See In the Matter of Targeting & Eliminating Unlawful Text Messages Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991 Advanced Methods to Target & Eliminate Unlawful Robocalls*, 38 FCC Rcd. 12247, 12256-57 (2023). These facts make the FCC's belated pronouncements unhelpful at best.

Plaintiff also argues that the FCC's orders interpreting the TCPA continue to be subject to an arbitrary-and-capricious standard of review. Opp. at 26. Plaintiff asserts that judicial review of FCC orders is subject to a deferential standard, regardless of *Loper Bright* and *McLaughlin*, because "Congress empowered the FCC to decide how to apply a statutory term to specific facts[.]" Opp. at 26 (emphasis removed). That contention is incorrect. This argument fundamentally misapprehends the judicial function under *Loper Bright* and the Administrative Procedure Act ("APA") and, if accepted, would amount to resurrecting *Chevron*. *See Alvarez*, 2026 WL 202930 at *2-*3 (rejecting as "inapt" a nearly identical argument as raised by Plaintiff)

"As a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*…But when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-capricious standard." *Seven Cnty. Infrastructure Coalition v. Eagle County, Colorado*, 605 U.S. at 179, 180 (citing *Loper Bright*, 603 U.S. at 391-92). In *Seven County*, for instance, the Court

reviewed whether an environmental impact statement complied with the National Environmental Policy Act ("NEPA"). 605 U.S. at 172. The Court held that this "fact-dependent, context-specific, and policy-laden" inquiry warranted "substantial deference" to the agency, especially because "NEPA is a purely procedural statute" and "imposes no substantive constraints on the agency's" decision-making. *Id.* at 180, 183 (emphasis removed). Here, though, unlike in *Seven County*, there is **no** such discretion entitling the FCC's statutory interpretations to such deferential review. Rather, the question here, by contrast, is a pure question of statutory interpretation: whether a text message is a "telephone call" within the meaning of section 227(c)(5). Under *Loper Bright*, the Court must independently determine the "best reading" of that term in section 227(c)(5). 603 U.S. at 400. The arbitrary-and-capricious standard plays no role in that inquiry.

Further, contrary to Plaintiff's suggestion, Congress did not delegate to the FCC the ability to define "telephone call," much less alter the scope of the private right of action at subsection 227(c)(5). *See 1-800-Flowers.com*, 2026 WL 456919. To be sure, the TCPA does provide the FCC certain implementation authority; however, such authority does not permit the FCC to alter the choices made by Congress or the TCPA's plain language. *Id*. *See also Ins. Mktg. Coal. Ltd. v. FCC*, 127 F.4th 303, 312 (11th Cir. 2025) ("[a]fter all, '[a] generic grant of rulemaking authority to fill gaps…does not allow the FCC to alter the specific choices Congress made'") (quoting *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 820 (D.C. Cir. 2022)). Nowhere does the TCPA give the FCC the authority to redefine "telephone call" beyond its plain meaning at the time of enactment, thereby expanding the class of plaintiffs who may file a lawsuit under

15

section 227(c)(5).  Only Congress can create a statutory private right of action—not the FCC.  While the FCC has certain implementation authority, it cannot alter Congress's choices.[4]

### B.  Plaintiff Is Not A "Residential Telephone Subscriber" Under the TCPA

Plaintiff is also not a "residential telephone subscriber" entitled to protection under the TCPA.  Teleflora acknowledges that some courts have held that cell-phone owners can be "residential telephone subscribers."  However, Teleflora respectfully submits that these courts have incorrectly focused on the definitions of terms in the present-day versus at the time of enactment.  This Court must look to the plain meaning of the statute at the time of enactment.  At the time of its enactment in 1991, a "residential telephone" referred to a "land line at a residence."  *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1234 (9th Cir. 2022) (Ikuta, J., dissenting in part).  *See also Gaker v. Q3M Ins. Sols.*, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023); *Cunningham v. Sunshine Consulting Grp., LLC*, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018).

The TCPA "specifically provides that the regulations implemented pursuant to Subsection 227(c) concern only 'the need to protect residential telephone subscribers' privacy rights.'"  *Cunningham*, 2018 WL 3496538, at *6 (quoting 47 U.S.C. § 227(c)(1)).  These realities are fatal to Plaintiff's claim because "[a] cellular phone and a residential phone are not the same thing."  *See Moore v. Triumph CSR Acquisition, LLC*, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023).

---

[4] Plaintiff also contends that interpreting "telephone call" to exclude text messages would "systematically exclude[] the experiences and needs of deaf and hard-of-hearing individuals, who have used text-based communication for telephone calls since long before the TCPA was enacted in 1991."  Opp. at 21-22.  Plaintiff's argument is misplaced.  Plaintiff's cause of action is premised upon text messages, not TTY/TDD technology.  Even if Plaintiff's policy concerns are well-founded, they do not alter the interpretive inquiry presently before the court:  whether Congress, in 1991, used the phrase "telephone call" in section 227(c)(5) to include SMS text messages.

As Plaintiff elsewhere recognizes (*see* Opp. at 8), Congress chose to use the term "residential telephone" in two instances of the TCPA: when describing "residential telephone line" and when describing "residential telephone subscribers'" *See* U.S.C. §§ 227(b)(1)(B), (c)(1). Applying traditional canons of construction shows that the phrase "residential telephone subscriber" refers to a landline and not a cell-phone. Indeed, "residential" modifies "telephone," such that a "residential telephone subscriber" is one who subscribes to a "residential telephone" service. This interpretation is supported by the preceding section 227(b)—which distinguishes a "residential telephone line" from a "cellular telephone service" So, just as "residential telephone" modifies the term "line" in section 227(b), so too does it modify the term "subscriber" in section 227(c)—in both instances referring only to home residential phones and not to mobile cellular phones.

Section 227(c), therefore, does not include all subscribers to phone plans generally, even if they use their non-residential cell-phones in a manner similar to residential telephone lines; like section 227(b)(1)(B) and its limitation to calls made to "residential telephone line[s]," section 227(c) is limited to "residential telephone subscribers"—*i.e.,* people who subscribe to residential telephone services. For that reason, Plaintiff's arguments about the use of his cell phone are misplaced. "[E]ven the strongest addiction to a cell phone cannot transform it into a residential phone." *Moore*, 2023 WL 8601528, at *2. Without alleging that he is subscribed to a residential telephone, Plaintiff is not a "residential telephone subscriber" and cannot state a claim under the Do-Not-Call provision. Thus, Count I of the SAC should be dismissed with prejudice.

### III.   CONCLUSION

For the foregoing reasons and for the reasons discussed in the Motion, Teleflora respectfully requests that this Court dismiss Count I of Plaintiff's SAC with prejudice.

DATED: February 26, 2026　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Connor Kelley*
　　　　　　　　　　　　　　　　　　Kristina M. Diaz (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　J. P. Pecht (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　Lauren Fishelman (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　　　ROLL LAW GROUP PC
　　　　　　　　　　　　　　　　　　11444 West Olympic Boulevard
　　　　　　　　　　　　　　　　　　Los Angeles, California 90064-1557
　　　　　　　　　　　　　　　　　　Telephone: (310) 966-8400
　　　　　　　　　　　　　　　　　　Facsimile: (310) 966-8810
　　　　　　　　　　　　　　　　　　kristina.diaz@roll.com; jp.pecht@roll.com;
　　　　　　　　　　　　　　　　　　lauren.fishelman@roll.com

　　　　　　　　　　　　　　　　　　Connor Kelley (VA Bar No. 93596)
　　　　　　　　　　　　　　　　　　COVINGTON & BURLING LLP
　　　　　　　　　　　　　　　　　　850 10th Street NW
　　　　　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　　　　　Telephone:  (202) 662-6000
　　　　　　　　　　　　　　　　　　Facsimile:  (202) 778-5628
　　　　　　　　　　　　　　　　　　ckelley@cov.com

　　　　　　　　　　　　　　　　　　Attorneys for TELEFLORA LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.

By: _/s/ Connor Kelley_
Connor Kelley